```
         THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                             CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

JIHAD AL-ALI,                     )    Case No. 2:04CV00547 DS

          Plaintiff,              )

     vs.                          )    MEMORANDUM OPINION
                                       AND ORDER ADDRESSING
SALT LAKE COMMUNITY COLLEGE,      )    CROSS MOTIONS FOR
                                       SUMMARY JUDGMENT
                                  )

          Defendant.              )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## I.   INTRODUCTION

Pending before the court are cross motions for summary judgment. Briefly stated, the relevant facts and allegations are these. Mr. Al-Ali, whose native country is Syria, applied with Defendant Salt Lake Community College ("SLCC") for an adjunct faculty position on November 20, 1998. He first taught at SLCC as an adjunct professor beginning Spring Semester of 1999. He was employed as an adjunct professor for seven additional terms or semesters until his termination on June 20, 2001.

For each term he worked, Mr. Al-Ali signed a Salt Lake Community College Term Adjunct Teaching Agreement which expired at the end of the term. Each of those agreements, among other things, specified that Mr. Al-Ali was a "temporary part-time employee", and that his teaching performance was "subject to evaluation as

determined by the COLLEGE". By signing each agreement, Mr. Al-Ali acknowledged that he understood "that there is no expectation of continued ADJUNCT teaching or other employment at the COLLEGE beyond the term governed by this agreement." At the time of his initial hire, as evidenced by the Adjunct Faculty Orientation Checklist which he signed, Mr. Al-Ali was advised: "Adjunct Faculty are hired with no expectation or obligation for employment beyond [the] current teaching assignment. Adjunct faculty receive no paid benefits and are not eligible for tenure. Adjunct Faculty should not serve on College committees." The SLCC Employee Grievance Policy, ¶ II.A, defines adjunct faculty as "[a]ll part-time faculty who are hired and paid on a per term basis with no expectation of continued employment."

Mr. AL-Ali was terminated on June 20, 2001, just six days into the new term, following a verbal altercation with a student.[1] He had previous complaints against him in the semester prior to June 2001, when he was alleged to have harassed two female students by telephone. He was the subject of a sexual harassment complaint

---

[1] Mr. Al-Ali disputes that he was fired and contends that he "was sent home by Dr. Merrill claiming that Mr. Ali needed some time away, but for reasons never explained to Mr. Ali, Mr. Ali's Summer 2001 contract was never honored or revoked, Mr. Ali never was permitted to teach another class since and no other contracts since have been accepted." Pl['s] Mem. Supp., p. 3. As discussed later, Mr. Al-Ali's contention that he did not learn that he had been fired until almost two years later is rejected.

lodged by one of his students on July 1, 1999. SLCC also contends that during his employment as an adjunct faculty member students taking his classes had an abnormally high withdrawal rate.

On September 21, 2001, Mr. Al-Ali certified to the Utah Department of Workforce Services that he voluntarily quit his job because he needed full time employment.

In August of 2001, SLCC's Dr. Merrill issued a letter of recommendation for Mr. Al-Ali so that he could seek alternative employment. Dr. Merrill states that the letter was not provided so he could seek employment with SLCC.

In September of 2002, Mr. Al-Ali contends that Dr. Merrill explained that he was not getting any teaching assignments because those assignment were being made by coordinators of the department, not him. Mr. Al-Ali states that he contacted those coordinators but was never called back for a job. Dr. Merrill clarifies:

> Neither I, nor the adjunct faculty coordinators at SLCC wanted Mr. Al-Ali teaching classes because of his previous conduct, i.e. harassing students, making religious comments, and the altercation that led to his termination. The coordinators are in an advisory role, and the ultimate decision on issuing term adjunct faculty contracts for the Department is mine. The reasons for not hiring Mr. Al-Ali did not change.

Merrill Aff. ¶ 9.

In November of 2002, Mr Al-Ali applied for another position with SLCC. SLCC's Dr. Merrill states that Mr. Al-Ali's last employment denial was November 17, 2002.

In June of 2003, Mr. Al-Ali complained to Dr. David Richardson, SLCC's Vice President of Academic Affairs. On June 14, 2003, Mr. Al-Ali met with Dr. Merrill and with Dr. Richardson to discuss why he was terminated and why he would not be rehired. Mr. Al-Ali made allegations of discrimination and was referred to Kay Water, SLCC's acting EEO Director, to file a discrimination complaint.

On August 11, 2003, Mr. AL-Ali filed a complaint with SLCC alleging harassment and discrimination in the hiring selection and in his termination based upon race, religion and national origin.

On November 4, 2003 Mr. Al-Ali filed a Charge of Discrimination with the Utah Anti-Discrimination Labor Division claiming discrimination based on race, religion, national origin, and retaliation.

4

## II.   SUMMARY JUDGEMENT STANDARD

Under Fed. R. Civ. P. 56, summary judgment is proper only when the pleadings, affidavits, depositions or admissions establish there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.  The burden of establishing the nonexistence of a genuine issue of material fact is on the moving party.[2]  *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). This burden has two distinct components:  an initial burden of production on the moving party, which burden when satisfied shifts to the nonmoving party, and an ultimate burden of persuasion, which always remains on the moving party.  *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (2d ed. 1983).

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id.  If the nonmoving party cannot muster sufficient evidence to make out a triable issue of fact on his claim, a trial would be useless and the moving party is entitled to summary judgment as a matter of law.  *Celotex*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202.

---

[2]Whether a fact is material is determined by looking to relevant substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**III.  DISCUSSION**

**A.  Mr. Al-Ali's Motion for Summary Judgment**

Mr. Al-Ali's Motion for Summary Judgment, which was prepared by counsel, is far from illuminating. He appears to assert that he is entitled to summary judgment because SLCC cannot demonstrate a legitimate nondiscriminatory reason for its "failure to rescue or failure to protect Plaintiff and others within protected classes from feelings of a hostile work environment". Mem. Supp., p. 11. The essence of Mr. Al-Ali's position seems to be that when in 2003, approximately two years after his employment was terminated, he finally got around to complaining to SLCC's acting EEO Director Kay Waters, SLCC failed to properly investigate his claims of discrimination. SLCC disputes any such failure.[3]

The Court is inclined to agree with SLCC that "Plaintiff is complaining that the Defendant's failure to investigate his claims of unlawful discrimination relating [to] his termination and

---

[3]Kay Waters, SLCC's interim EEO Director states: "Adjunct instructors are temporary, at-will and are not eligible to utilize the formal grievance procedure at SLCC pursuant to SLCC's policies and procedures in place as of June 2001 to the present day." Waters Aff. ¶5.  In a September 24, 2003 letter to Mr. Al-Ali, Waters wrote: "According to the Salt Lake Community College Grievance Procedure that was in effect at the time of your termination (College Policy Chapter 2, Section 3:06, Employee Grievance Procedure), your complaint needed to be filed within 30 days from the last date of alleged harm.  Your employment as an adjunct instructor was terminated June 21, 2001, and your complaint was filed with the College on August 11, 2003, well beyond the time limit."

refusal to be rehired following that termination is, in fact, a request that the Defendant undo the alleged discriminatory decision to terminate him and to refuse to rehire him following the termination." Def['s] Mem. Opp'n, p. 6.  "An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006), *petition for cert. filed*, November 3, 2006 (No. 06-638)(quoting *Croy v. Cobe Labs, Inc.*, 345 F.3d 1199, 1203 (10th Cir. 2003)).

In any event, based on the pleadings and the record before it, the Court finds no basis in law or fact to award Mr. Al-Ali summary judgment on his claims.  And contrary to Mr. Al-Ali's assertion, as noted in the discussion to follow, SLCC has set forth legitimate nondiscriminatory reasons for its actions.

**B. SLCC's Motion for Summary Judgment**

SLCC seeks summary judgment on all of Mr. Al-Ali's claims. Mr. Al-Ali alleges generally and in conclusory fashion that SLCC subjected him to employment discrimination in violation of Title

VII of the Civil Rights Act of 1964.[4] The Complaint, which was prepared by counsel, is not a model of pleading or clarity. It appears that Mr. Al-Ali purports to allege employment discrimination based on claims for disparate treatment, wrongful discharge, refusal to hire, hostile work environment, and retaliation.[5] Specifically, Mr. Al-Ali alleges that "Defendant disparately treated [him] differently than other white employees based upon his race, color, and or national origin", Compl. ¶60, that "Defendant discharged [him] from employment inappropriately without just cause", *id*. ¶64, and that "Defendant unjustly refused to hire [him] based upon his race, color or national origin", *id*. ¶68.

---

[4]Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2(a)(1).

[5]In pleading jurisdiction in his Complaint, Mr. Al-Ali who was represented by counsel at the time, asserts that the Court has supplemental jurisdiction "regarding state claims, including at the common law and other torts." Compl. ¶ 2. While Mr. Al-Ali references injury for emotional distress and damage to reputation due to alleged disparate treatment, and claims damages for those injuries, they are not pled as causes of action nor are they supported by any factual allegations in the Complaint. To the extent that those allegations can be viewed as separate causes of action, they are summarily dismissed.

### 1. Statute of Limitations

SLCC first asserts that Mr. Al-Ali's claims of discrimination are barred by the applicable statute of limitations.

Under Title VII a plaintiff shall file an employment discrimination charge with the Equal Employment Opportunity Commission either 180 or 300 days after an "alleged unlawful employment practice occurred". 42 U.S.C. § 2000(e)-5(e)(1). Because Utah is "a state that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice". *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).

The Court agrees with SLCC that the facts of record establish that Mr. Al-Ali's employment as an adjunct faculty member was terminated on June 20, 2001. However, Mr. Al-Ali did not file his charge of discrimination with the Utah Anti-Discrimination Labor Division ("UALD") until November 4, 2003. Because he failed to file his claim with the UALD until after 300 days from the date of his termination, his claim in that regard is barred, as is his claim of hostile work environment. Likewise, Mr. Al-Ali's claims that he applied for, but was denied, other positions with SLCC, the

last allegedly being November 17, 2002, are time barred for the same reason.  Similarly, Mr. Al-Ali's claim of disparate treatment is also barred for failure to file his charge of discrimination within 300 days of the last alleged discriminatory act.

Mr. Al-Ali's contention, that the time for him to file his claims with the EEOC was equitably tolled because he did not learn that he had been fired from his summer adjunct position until two years later on June 14, 2003, is unsupported by the facts and is rejected.[6]  Mr. Al-Ali's last employment contract with SLCC expired by its terms at the end of the 2001 Summer Semester, Session III. It is undisputed that he was removed from his classroom just six days into the term and not permitted to return to employment for

---

[6] In this circuit a Title VII claim will be tolled only on a showing of active deception. *Simons v. Southwest Petro-Chem, Inc.*, 28 F.3d 1029, 1031 (10th Cir. 1994).

that term or any term thereafter.[7] The unavoidable fact is that Mr. Al-Ali's employment contract terminated at the end of the 2001 Summer Semester and he was not offered a new one. He applied for unemployment insurance in September of 2001. There was simply no basis for him to conclude that his employment had not come to an end, for whatever reason, or that somehow he remained employed with SLCC.[8] Indeed, Mr. Al-Ali admits that his last contract was not honored. *See* notes 1, 6. It is beyond dispute that Mr. Al-Ali was on notice that his employment with SLCC was temporary and there was no expectation of continued employment. Even if, as Mr. Al-Ali claims, he was orally promised a position for the fall semester following his removal, he was placed on notice that he was not

---

[7] Mr. Al-Ali contends that "[o]n June 21st, 2001 Dr. Merrill explained my removal of the Summer 2001 teaching assignment because I was teaching continuously for eight semesters, and I might been [sic] burned out. Therefore I should take the remaining [sic] of the Summer 2001 off to rest, and he had in fact assured me several times that I will get my teaching assignment for the following semester, Fall 2001. When the teaching assignments for the Fall 2001 were scheduled, and I did not have an Assignment [sic]." Mem. Opp'n to Def.['s] Mot. Summ. J.,p.11. In a variation of the same facts, Mr. Al-Ali contends "Mr. Ali was sent home by Dr. Merrill claiming that Mr. Ali needed some time away, but for reasons never explained to Mr. Ali, [his] Summer 2001 contract was never honored or revoked, Mr. Ali never was permitted to teach another class since and no other contracts since have been accepted." Pl['s] Mem. Supp. p. 3.

[8] Claims by Mr. Al-Ali such as that "[o]n or about May 5, 2003, [he] received a letter from the Key Office requesting the '(key)s' in his possession be returned signifying for the first time [he] may be permanently discharged", Pl['s] Mem. Supp. p. 5, do not withstand scrutiny in the context of all the facts and fall far short of creating a disputed issue.

going to be employed when no offer was forthcoming at that time. In sum, Mr. Al-Ali has failed to set forth any facts from which a reasonable jury could conclude that SLCC actively deceived him regarding the circumstances of his termination and that prevented him from timely pursuing his claims.

### 2. Disparate Treatment, Wrongful Termination, Refusal to Hire

Not only are Mr. Al-Ali's claims for disparate treatment, wrongful termination and refusal to hire barred by the statute of limitations, but they also fail because SLCC has advanced a legitimate nondiscriminatory reason for firing him and for not rehiring him that Mr. Al-Ali has failed to put into dispute as unworthy of belief.

> In support of his claim of discrimination, Mr. Al-ALI states:
>
> At some point for reasons not yet discovered by me (even despite years of litigation and discovery), these employees [Judd Morgan, Randy Johnson, Dr. Merrill, and Kay Waters] treated me differently than they would other white employees, it became well established that these employees did not want me to work there any longer as it would later be discovered that they would routinely and regularly lie to me in apparent efforts to lull me into inaction or to deceive me that they were treating my discrimination complaint legitimately, when in fact they were not. It cannot be for any other reason but for racial animus, because my performance record while at the College has been exemplary.

Al-Ali Aff. ¶4.

12

Because Mr. Al-Ali has presented no direct evidence of discrimination, the court turns to the familiar burden shifting format set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Thomas v. Denny's, Inc.,* 111 F.3d 1506, 1509 (10th Cir.), *cert. denied*, 522 U.S. 1028 (1997). Plaintiff first has the burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of race discrimination, Mr. Al-Ali must show "(1) that he is a member of a racial minority, (2) that he suffered an adverse employment action, and (3) that similarly situated employees were treated differently." *Trujillo v. University of Colo. Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998); *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff meets his initial burden, then the burden of production shifts to the defendant to "demonstrate 'some legitimate nondiscriminatory reason' for the adverse employment action". *Trujillo*, 157 F. 3d at 1215 (citation omitted). Lastly, if the defendant meets its burden, "the burden shifts back to the employer to show that there is a genuine dispute of material fact as to whether the employer's reason for the challenged action is pretextual and unworthy of belief." *Id.*

Assuming, without deciding, that Mr. Al-Ali has established a prima facie case of discrimination, SLCC has met its burden of producing a legitimate nondiscriminatory explanation to rebut any

13

such prima facie case--i.e., that Mr. Al-Ali's job performance was unsatisfactory in that he had an altercation with a student, other students had complained about him in the past, and he had an abnormally high withdrawal rate from his classes.

"A reason is not a '" pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Trujillo*, 157 F.3d at 1215 (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993)). SLCC is entitled to summary judgment unless Mr. Al-Ali can "'offer evidence tending to show the defendant's innocent explanation for his employment decision was false.'" *Id.*(quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 n.14 (10th Cir. 1995)). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999), *abrogation on other grounds recognized by Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137 (10th Cir. 2003).

Mr. Al-Ali has produced no viable evidence that SLCC's proffered explanation is a pretext for discrimination. His conclusory and self-serving statements regarding his qualifications fail to satisfy his burden of proof on the matter. *Id*. Likewise,

14

the few student comment sheets he submits as evidence of his teaching ability, at most, reflect another view of his teaching ability, not that discrimination was the real reason for his termination or his failure to obtain another contract. In short, Mr. Al-Ali has offered nothing sufficient to create a genuine issue of material fact that SLCC's explanation for removing him from the classroom during his last contractual term, and for not offering him further contracts, is unworthy of belief.

### 3. Hostile Work Environment

A claim of a hostile work environment, as SLCC notes, is not the thrust of Mr. Al-Ali's allegations. Nevertheless, he states that one of the discriminatory acts which form the basis of his law suit is "[g]eneral harassment for the race/national origin based discriminatory conduct which is an unlawful employment practice". Compl. ¶52.

Mr. Al-Ali cannot prevail on a claim of hostile work environment. First, the claim is time barred as discussed earlier. Second, there is simply no evidence of actionable conduct. To prevail Mr. Al-Ali must show "'under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus.'" *Witt v.*

*Roadway Exp.,* 136 F.3d 1424, 1432 (10th Cir.), *cert. denied*, 525 U.S. 881 (1998)(citation omitted). "General harassment if not racial ... is not actionable. The Plaintiff must show more than a few isolated incidents of racial enmity." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)(citation omitted), *cert. denied*, 515 U.S. 826 (1995). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Id*. The alleged harassment must be both objectively and subjectively offensive in order to survive judgment. *Witt*, 136 F.3d at 1432-33. There is simply no evidence to support a claim by Mr. Al-Ali of hostile work environment.

### 4. Retaliation

Retaliation, likewise, is not the thrust of Mr. Al-Ali's allegations. However, at paragraph 52 of his Complaint, Mr. Ali asserts that one of the acts of discrimination that form the basis of his law suit is "[r]etaliation for complaint of employment discrimination".

Mr. Al-Ali cannot prevail on a retaliation claim because he has not established a causal connection between any protected activity and an adverse employment action. *See Trujillo,* 157 F.3d 1215 (to establish a retaliation claim, plaintiff must show (1) he engaged in protected opposition to discrimination; (2) he was

subjected to adverse employment action subsequent to or contemporaneous with the protected opposition; and, (3) that there is a causal connection between the protected activity and the adverse employment action).

Mr. Al-Ali was fired in June of 2001. He last applied for employment with SLCC in November of 2002. He did not file a complaint alleging harassment and discrimination with SLCC until August 11, 2003, and he did not file his Charge of Discrimination with the State of Utah until November of 2003. Based on the record before the court, these were his first acts of protected opposition to any alleged discrimination by SLCC. Therefore, SLCC is entitled to summary judgment on any claim that he was not hired for retaliatory reasons related to his filing charges of discrimination because Mr. Al-Ali has failed to show that he was subjected to an adverse employment action subsequent to or contemporaneous with his protected opposition.

### III.  CONCLUSION

For the reasons stated, Plaintiff Mr. Al-Ali's Motion for Summary Judgment (Doc. #105) is denied.  Defendant SLCC's Motion for Summary Judgment (Doc. # 119) is granted.  The Clerk of the Court is requested to enter final judgment for the Defendant.

IT IS SO ORDERED.

DATED this 23rd day of February, 2007.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT